UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

UNITED STATES OF AMERICA,

           -against-

PEDRO TAVARES, also known as
"Jose Antonio Velazquez,"

           Defendant.

------------------------------------------------------------------X

**MEMORANDUM AND ORDER
11-CR-610 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

        The defendant in this criminal case, Pedro Tavares, moves pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure to suppress all statements that he made to agents of United States Customs and Border Protection while he was being interrogated by them on July 28, 2011 at John F. Kennedy International Airport in Queens, New York. Because Tavares has not asserted facts sufficient to show that he was in custody for purposes of the Miranda doctrine, the motion is DENIED.

        Through his lawyer's declaration, Tavares alleges the following facts.[1] After arriving at Kennedy Airport on a flight from Santo Domingo, Dominican Republic, Tavares presented an authentic United States passport, but was referred for "secondary inspection" because his name was on a watch list. (See Mot. to Suppress (Docket Entry # 13) ¶¶ 3-7.) Customs and Border Protection ("CBP") had become aware that someone with the same name and social security

--------

[1] The government contends that Tavares's reliance on counsel's declaration, rather than his own sworn affidavit, is fatal to his motion because he has not asserted any facts based on personal knowledge. The court does not reach this issue because even if all of the factual allegations contained in the lawyer's declaration were true, they would not establish custody for the purposes of the Miranda doctrine. See infra.

1

number as those associated with Tavares's passport died in 1998.[2] (Id. ¶ 6.) CBP also contacted the United States Department of State regarding Tavares's arrival. (Id. ¶ 11.) A uniformed agent escorted Tavares to a separate inspection area, where a uniformed CBP officer interrogated Tavares without first reading him his Miranda rights. (Id. ¶¶ 8-10.) After Tavares made incriminating statements, agents from the State Department arrived in the secondary inspection area and gave Tavares Miranda warnings. (Id. ¶¶ 9, 11-12.) At this point, Tavares invoked his right to remain silent. (Id. ¶ 13.)

Tavares is charged with attempting to use a passport, the issuance of which was secured by one or more false statements, see 18 U.S.C. 1542, and aggravated identity theft, see 18 U.S.C. § 1028A(a)(1). (See Indictment (Docket Entry # 5) at 1.) He argues that the incriminating statements he made to CBP are inadmissable at trial because he did not receive Miranda warnings beforehand. The government contends that the CBP was not obligated to give Miranda warnings to Tavares because, based on the facts asserted the declaration, Tavares was not in custody at the time he made the incriminating statements. The government is correct.

Miranda warnings are only required when a defendant is in custody, see Miranda v. State of Arizona, 384 U.S. 436, 467 (1965); and a defendant is in "custody" for the purposes of Miranda only when a reasonable person in his position would feel "subject[] to restraints comparable to those associated with formal arrest," Georgison v. Donelli, 588 F.3d 145, 155 (2d Cir. 2009) (quoting Berkemer v. McCarty, 468 U.S. 420, 441 (1984)). The defendant bears the

---

[2] All other documents submitted in this case indicate that the individual whose name and social security number were associated with Tavares's passport, Jose Antonio Velasquez, actually died in 1988. (See Compl. (Docket Entry #1); Response in Opp. to Mot. to Suppress (Docket Entry # 14).) Obviously, this factual discrepancy has no bearing on the court's analysis here.

burden of proving the circumstances that would cause a reasonable person to sense such restraints. Cf. United States v. Pena, 961 F.2d 333, 338 (2d Cir. 1992) (on motion to suppress seized drugs, defendant has the burden of proving protectible Fourth Amendment interest).

Here, Tavares asserts facts that, taken as true, show nothing more than the conditions typical of a modern border inspection. To be sure, Tavares was confronted by a uniformed government agent and was not free to leave the CBP interrogation. But a reasonable person in his position would not understand these restrains as comparable to those associated with formal arrest. Rather, such a person would suppose that the restraints were attendant to the immigration screening process—a process to which all international travelers entering the United States must submit to one degree or another. This conclusion is not only logical; it is compelled by case law. On facts nearly identical to those asserted by Tavares, the Second Circuit recently held that "Miranda warnings are not required in routine secondary inspection when . . . a reasonable person would consider the questions asked (e.g., name, country of birth, citizenship, etc.) to be relevant to an admissibility or customs determination." United States v. FNU LNU, 653 F.3d 144, 156 (2d Cir. 2011) (Jacobs, C.J. concurring) (stating also that the entire panel agreed with this portion of his concurrence). The court held out the possibility that an entrant could end up in custody during a border inspection if truly exceptional conditions were present, see id. (listing as examples,"handcuffs, drawn weapons, [the] administration of Sodium Pentothal"), but no unusual restraints are asserted here. As Tavares has not otherwise attempted to distinguish his case from binding precedent, his motion to suppress must be denied.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
January 23, 2012

NICHOLAS G. GARAUFIS
United States District Judge

3